**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000162
18-MAY-2023
09:30 AM
Dkt. 67 MO**

NOS. CAAP-22-0000162 & CAAP-22-0000675

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

CAAP-22-0000162
IN THE INTEREST OF KK
(FC-S NO. 19-00039)

AND

CAAP-22-0000675
IN THE MATTER OF THE GUARDIANSHIP OF KK
(CASE NO. 1GD211006285)

APPEALS FROM THE FAMILY COURT OF THE FIRST CIRCUIT

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, and Wadsworth and Chan, JJ.)

In these consolidated appeals, Appellant Mother
(**Mother**) appeals from the following orders entered in the Family
Court of the First Circuit (**family court**):  (1) the March 10,
2022 Orders Concerning Child Protective Act (**CPA Orders**), entered
in FC-S No. 19-00039 (**CPA Case**); and (2) the March 18, 2022 Order
Appointing a Guardian of a Minor (**Guardianship Order**), entered in
FC-G No. 21-1-6285 (**Guardianship Case**).[1]  The CPA Orders revoked
Appellee Department of Human Services' (**DHS**) foster custody of
Mother's child, KK; denied Mother's February 1, 2022 Motion for
Family Supervision; and terminated the family court's

---

[1]    The Honorable Jessi L.K. Hall presided over the consolidated trial
on the November 16, 2021 Petition for Appointment of Guardian of a Minor
(**Guardianship Petition)**, filed in the Guardianship Case, and Mother's Motion
for Family Supervision, filed in the CPA Case, and entered the Guardianship
Order and the CPA Orders.

jurisdiction.  The Guardianship Order appointed KK's resource caregiver, who is also KK's maternal uncle (**Uncle**), as KK's guardian.

On appeal, Mother contends that the family court erred: (1) in denying Mother's Motion for Family Supervision; (2) in interpreting Hawaii Revised Statutes (**HRS**) §§ 587A-31 and 587A-32 (quoted infra), by failing to apply the "clear and convincing evidence" standard; (3) in granting the Guardianship Petition; and (4) in failing to make specific findings under HRS §§ 587A-31 and 587A-32 of "compelling reasons" why legal guardianship was in KK's best interest.  Mother also appears to challenge multiple findings of fact (**FOFs**) and conclusions of law (**COLs**) in the family court's April 26, 2022 Findings of Fact and Conclusions of Law, entered in the CPA Case and the Guardianship Case.

For the reasons discussed below, we vacate the CPA Orders and the Guardianship Order, and remand to the family court for further proceedings.

## I. Background

Starting in November 2018, DHS received multiple calls of concern regarding KK and her three brothers (**Children**) due to domestic violence between Mother and Father[2] (**Parents**) and substance abuse by both Parents.  On February 12, 2019, DHS confirmed the threat of abuse and neglect of the Children, who were placed in protective custody under HRS § 587A-8.  On February 15, 2019, DHS filed a Petition for Temporary Foster Custody (**Petition**), initiating the CPA Case.

At the initial hearing for the CPA case, Parents knowingly and voluntarily stipulated to the jurisdiction of the family court, adjudication of the Petition, the award of foster custody of the Children to DHS, and a service plan, which included domestic violence education, a psychological evaluation, a substance abuse assessment, random urinalysis, and parenting education.

---

[2]    Father does not appeal from the CPA Orders or the Guardianship Order.

Between August 2019 and January 2022, the family court held periodic review and permanency hearings pursuant to HRS §§ 587A-30 and -31 (quoted infra), to review Parents' progress in services and their ability to provide a safe family home, to review the safety and well-being of the Children, and to assess case direction. Mother made enough progress with her services that KK's three brothers were returned to Mother's care under family supervision, on March 13, 2020, November 5, 2020, and December 21, 2020, respectively.[3/] Thereafter, family supervision was automatically revoked as to the oldest brother when he turned 18, and following DHS's assessment that Mother was able to provide a safe family home for the two younger brothers, the family court revoked family supervision and terminated its jurisdiction as to them.

However, KK remained in foster care from her initial removal in February 2019,[4/] and has remained in the care of Uncle for several years. KK has stated that she wishes to stay in Uncle's home and does not want to live with Mother, because Mother does not acknowledge her feelings and is unable to meet her emotional needs.

It appears that from the first review/permanency hearing in August 2019, DHS identified a "[c]oncurrent permanency plan" of "reunification" and "legal guardianship" for KK. Similarly, from at least August 2020, the family court's post-hearing orders stated that "[t]he proper concurrent permanency plan" was "reunification" and "legal guardianship" for KK.

On November 16, 2021, DHS filed the Guardianship Petition to have Uncle appointed as KK's legal guardian, initiating FC-G No. 21-1-6285. Mother opposed the Guardianship Petition and requested a trial.

---

[3/]    Parents were involved in a domestic violence incident on October 7, 2020, and have not lived together since that time.

[4/]    In each periodic review/permanency hearing, the family court continued foster custody of KK, as reflected in the court's Orders Concerning Child Protective Act, entered on August 8, 2019, August 4, 2020, October 29, 2020, January 28, 2021, April 16, 2021, July 9, 2021, October 11, 2021, and January 11, 2022, and in the court minutes dated January 22, 2020.

On February 1, 2022, in the CPA case, Mother filed the Motion for Family Supervision to have KK returned to her care.[5/] DHS and KK's court-appointed guardian ad litem (**GAL**) opposed Mother's motion.

On March 9 and 10, 2022, the family court held a consolidated trial on the Motion for Family Supervision and the Guardianship Petition. Following trial, the family court determined that Mother was not presently willing and able to provide KK with a safe family home, even with the assistance of a service plan, and thus denied the Motion for Family Supervision. The court further determined that Mother was not able to exercise her parental rights as to KK, and the appointment of Uncle as KK's legal guardian was in her best interest. The court thus appointed Uncle as KK's legal guardian pursuant to HRS § 560:5-204(b).[6/]

## II. Standards of Review

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

In re R Children, 145 Hawaiʻi 477, 482, 454 P.3d 418, 423 (2019)

---

[5/] HRS § 587A-4 (2018) defines "family supervision" as "the legal status in which a child's legal custodian is willing and able, with the assistance of a service plan, to provide the child with a safe family home." Under HRS § 587A-30(b)(1)(B) (2018), a child may be placed in family supervision "if the court finds that the child's parents are willing and able to provide the child with a safe family home with the assistance of a service plan[.]" HRS § 587A-7(a) (2018) sets forth the factors the family court must consider when deciding whether a child's parents are willing and able to provide the child with a safe family home, with the assistance of a service plan.

[6/] HRS § 560:5-204(b) (2018) states:

> (b) The court may appoint a guardian for a minor if the court finds the appointment is in the minor's best interest, and:
>
> (1) The parents consent;
>
> (2) All parental rights have been terminated; or
>
> (3) The parents are unwilling or unable to exercise their parental rights.

4

(brackets omitted) (quoting <u>Fisher v. Fisher</u>, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006)).

"The family court's conclusions of law, on appeal, are reviewed <u>de novo</u> under the right/wrong standard." <u>Id.</u> (citing <u>In re Jane Doe</u>, 101 Hawai'i 220, 227, 65 P.3d 167, 174 (2003)). "Statutory interpretation is a question of law reviewable de novo." <u>Id.</u> (quoting <u>State v. Wheeler</u>, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009)).

### III. Discussion

Mother contends that because the CPA case originated and proceeded for more than three years under the CPA, the family court was required to decide the Motion for Family Supervision and the Guardianship Petition in accordance with the procedures and standards set forth in HRS §§ 587A-31[7] and 587A-32,[8] and the

---

[7] HRS § 587A-31 (2018) provides, in relevant part:

(d)  At each permanency hearing, the court shall order:

(1)  The child's reunification with a parent or parents;

(2)  The child's continued placement in foster care, where:

    (A)  Reunification is expected to occur within a time frame that is consistent with the developmental needs of the child; and

    (B)  The safety and health of the child can be adequately safeguarded; or

(3)  A permanent plan with a goal of:

    . . . .

    (B)  Placing the child for legal guardianship if the department documents and presents to the court a compelling reason why termination of parental rights and adoption are not in the best interests of the child[.]

[8] HRS § 587A-32 (2018) provides, in relevant part:

(a) The permanent plan shall:

(1)  State whether the permanency goal for the child will be achieved through adoption, legal guardianship, or permanent custody;

(2)  Establish a reasonable period of time by which the adoption or legal guardianship shall be finalized;

(3)  Document:

(continued...)

5

court erred in failing to do so. Specifically, in her second and third points of error, Mother argues that the family court was required, but failed, to "determine by 'clear and convincing' evidence that Mother[] is not able to provide [KK] with a safe family home, even with the assistance of a service plan, and there are compelling reason(s) why legal guardianship is in [KK]'s best interest."[9] In her fourth point of error, Mother argues that the family court was required, but failed, to make specific findings under HRS §§ 587A-31 and 587A-32 of "compelling reason(s) why legal guardianship was in [KK]'s best interest[.]"

DHS, on the other hand, contends that HRS §§ 587A-2 and 587A-32 do not apply to "this case," and the family court complied with HRS § 587A-31. Specifically, DHS argues that HRS § 587A-2, which references the clear and convincing evidence standard (see supra note 9), does not apply because a guardianship is not permanent, and under HRS § 560:5-204, the termination of parental rights is not required to appoint a guardian for a minor. Next, DHS argues that the family court complied with HRS § 587A-31, as follows:

> In a permanency hearing under HRS § 587A-31(d), the family court must order only one of the following options "(1) The child's reunification with a parent or parents; (2) The child's continued placement in foster care where: (A) Reunification is expected to occur within a time frame that is consistent with the developmental needs of the child; and (B) The safety and health of the child can be adequately safeguarded[,]" or order a permanent plan as described in HRS § 587A-32 with a permanency goal of adoption, legal guardianship, or permanent custody.

Here, DHS asserts, the family court complied with HRS § 587A-31(d) at each of the periodic review/permanency hearings "by continuing foster custody over KK while concurrently working

---

[8] (...continued)

     (A)    A compelling reason why legal guardianship or permanent custody is in the child's best interests if adoption is not the goal; or

     (B)    A compelling reason why permanent custody is in the child's best interests if adoption or legal guardianship is not the goal[.]

[9] Mother also cites HRS § 587A-2 (2018) in support of her argument. That section states, in relevant part, "Where the court has determined, by clear and convincing evidence, that the child cannot be returned to a safe family home, the child shall be permanently placed in a timely manner."

with Mother to reunify with KK[,]" and thus "did not have the option to order a permanent plan [under HRS § 587A-31(d)(3)] that complied with the requirements of HRS § 587A-32." According to DHS, although the court entered orders following each review/permanency hearing that the "proper concurrent permanency plan" was reunification and legal guardianship, the court did not order a "permanent plan" under HRS § 587A-31(d)(3), and thus HRS § 587A-32 did not apply.

While this matter did not involve a termination-of-parental-rights hearing, the supreme court's decision in R Children, 145 Hawaiʻi 477, 454 P.3d 418, which addressed the CPA's permanent plan requirement, is instructive. There, the court addressed the interplay between two statutory provisions that provide for the termination of parental rights — HRS § 587A-33, a CPA provision, and HRS § 571-61(b)(1)(E), a family court provision. Id. at 479, 454 P.3d at 420. The court held that a father's parental rights could not be terminated based on the family court provision, when the CPA provision contained a requirement not present in the family court provision, i.e., that the family court "find that the 'proposed permanent plan is in the best interests of the child' before terminating a parent's parental rights." Id. (quoting HRS § 587A-33(a)(3)). The court explained: "Despite the overlap in the CPA and the Family Courts chapter, the Family Court Provision and the CPA Provision are not interchangeable. The Family Court Provision cannot serve as a substitute for the CPA Provision when the CPA Provision contains an additional requirement." Id. at 484, 454 P.3d at 425.

In reaching this conclusion, the court noted that the CPA's permanent plan requirement "furthers the legislative intent to serve the best interests of the child." Id. at 485, 454 P.3d at 426. The court reasoned:

> The CPA also explicitly calls for the implementation of permanent plans. The CPA's statement of purpose references permanent plans four times. HRS § 587A-2. Also, the CPA "makes provisions for the service, treatment, and permanent plans for [] children and their families." HRS § 587A-2 (emphasis added). The legislative history of Act 316, which enacted a previous version of HRS chapter 587, states that the CPA was "to provide for timely permanent planning by incorporating in the Child Protective Act certain provisions of the termination of parental rights statute[.]" H. Stand.

7

> Comm. Rep. No. 236-86, in 1986 House Journal, at 1088 (emphasis added).  The CPA's purpose and legislative history convey the legislature's intent that the CPA provide for permanent plans that are in the best interests of children.
> . . . .
>
> Moreover, the permanent plan requirement in the CPA Provision adds an additional, specific criterion that we cannot disregard. . . .  Using the statutes together but allowing the specific provision to control where the family court does not find the permanent plan to be in the child's best interests comports with the legislature's intent. Therefore, the specific permanent plan requirement of the CPA Provision controls.

Id. at 486, 454 P.3d at 427; see also id. at 487, 454 P.3d at 428 ("The CPA envisioned the implementation of permanent plans to bring safety and stability to the children within its jurisdiction.")

Like R Children, the present matter involves the interplay between seemingly similar statutory provisions addressing children's needs, albeit provisions permitting the placement of a child for legal guardianship without terminating parental rights.  Compare HRS §§ 587A-31(d)(3) (providing for a permanent plan with a goal of placing the child for legal guardianship) and -32 (stating the requirements for a permanent plan) with HRS § 560:5-204(b)(1) and (3) (providing for appointment of a guardian for a minor without terminating parental rights).  However, the relevant CPA provisions provide for a specific permanent plan with a goal of "[p]lacing the child for legal guardianship if the department documents and presents to the court a compelling reason why termination of parental rights and adoption are not in the best interests of the child[,]" HRS § 587A-31(d)(3), as well as the other requirements for a permanent plan, HRS § 587A-32.  We conclude that these specific CPA provisions controlled and should have been followed in these cases, where the family court:  (1) held proceedings, including multiple permanency hearings, under the CPA for over three years; (2) issued multiple post-hearing orders that included legal guardianship as a permanency goal for KK; and (3) ultimately denied KK's reunification with Mother, ended foster custody over KK, and appointed Uncle as KK's legal guardian without ordering a permanent plan that complied with HRS §§ 587A-31(d)(3) and 587A-32.

DHS is correct that at a permanency hearing, when a family court orders a child's continued placement in foster care under HRS § 587A-31(2), it is not required to order a permanent plan under § 587A-31(3). It does not follow, however, that having repeatedly invoked the CPA's permanency planning provisions,[10/] the family court could then disregard the CPA's permanent plan requirement, through a proceeding that substituted the guardianship provisions of HRS § 560:5-204(b) for those of HRS §§ 587A-31(d)(3) and 587A-32. The consolidated trial on the Motion for Family Supervision and the Guardianship Petition also functioned in substance as a permanency hearing, at which the court effectively denied KK's reunification with Mother (by denying the Motion for Family Supervision) and ended foster care over KK. However, no permanent plan was prepared, considered or ordered pursuant to HRS §§ 587A-31(d). The court instead relied on the provisions of HRS § 560:5-204(b) to appoint Uncle as KK's guardian. This substitution, where the applicable CPA provisions contained a requirement not present in the guardianship provisions of HRS § 560:5-204(b), was error. See R Children, 145 Hawaiʻi at 484, 454 P.3d at 425. Because this error infected the family court's intertwined analysis of the Motion for Family Supervision and the Guardianship Petition, the CPA Orders and the Guardianship Order must be vacated. See id. at 487, 454 P.3d at 428.

Given our decision, we do not reach Mother's remaining points of error, including her summary challenge to the multiple FOFs and COLs listed in her abbreviated opening brief.

## IV. Conclusion

For the reasons discussed above, we vacate the following orders entered in the Family Court of the First

---

[10/] At a permanency hearing, the family court may find that legal guardianship is an appropriate "permanency goal" for a child, HRS § 587A-31(c)(5), and a permanent plan may state that the "permanency goal" for a child will be achieved through legal guardianship, id. § 587A-32(a)(1). HRS § 587A-31(d)(3) makes clear that such a permanency goal can be placing the child for legal guardianship without terminating parental rights. Here, in fact, the family court issued multiple post-permanency hearing orders that included legal guardianship as a permanency goal for KK.

Circuit:  (1) the March 10, 2022 Orders Concerning Child Protective Act, entered in FC-S No. 19-00039; and (2) the March 18, 2022 Order Appointing a Guardian of a Minor, entered in FC-G No. 21-1-6285.  We remand these cases to the family court for further proceedings consistent with this opinion.

DATED:  Honolulu, Hawaiʻi, May 18, 2023.


On the briefs:

Randal I. Shintani,
for Mother-Appellee.

Kurt J. Shimamoto,
Julio C. Herrera,
Patrick A. Pascual, and
Regina Anne M. Shimada,
Deputies Attorney General,
for Petitioner-Appellee.

Emily M. Hills, and
Mary Pascual
(Legal Aid Society of Hawaii)
for Guardian Ad Litem

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Derrick H.M. Chan
Associate Judge